UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL RICARDO GARCIA RUIZ (A No. 244 236 572),<br>Petitioner,<br>v.<br>CHRISTOPHER CHESTNUT, et al.,<br>Respondents. | No. 1:26-cv-4715 TLN CKD P<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner, detained by the Immigration and Customs Enforcement Agency (ICE) at the California City ICE Detention Facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging that detention.[1] For the reasons which follow, the court recommends that the petition for a writ of habeas corpus be granted.

I. Background

Petitioner, 19, is a native and citizen of Venezuela. ECF No. 7-1 at 1, No 1 at 2. He entered the United States on October 24, 2023, at the Laredo, Texas point of entry with his mother and siblings. ECF No. 7-1 at 2, No. 1 at 2. He was issued a notice to appear for removal proceedings and paroled into the United States. Id. The status of the removal proceedings is not

[1] This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

clear. Petitioner submitted an application for asylum on January 5, 2024, and the petition is still pending. ECF No. 1-2 at 16, 1 at 2. On April 8, 2024, petitioner was granted deferred action as to removal for a period of four years. ECF No. 1-2 at 24.

On April 14, 2026, petitioner was convicted of three counts of sexual battery, all class A misdemeanors in Utah. ECF No. 7-3 at 6. It does not appear petitioner has been sentenced. Id.

Petitioner was arrested by ICE officers on April 16, 2026, at the Davis County Justice Center in Utah and charged with being inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I). ECF 7-1. Petitioner has been in ICE custody since his arrest. It does not appear petitioner has had a hearing before an immigration judge to determine the appropriateness of his being in custody. Online Department of Justice records indicate that petitioner is scheduled for a hearing before an immigration judge on July 29, 2026. The court assumes removal as opposed to detention is the subject of the hearing.

II. Standard for Habeas Relief

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

III. Violation of Fifth Amendment

A. Liberty Interest

Generally speaking, the Due Process Clause of the Fifth Amendment applies to all persons within the "geographic borders" of the United States. Id. at 693. "Aliens, even aliens whose

presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments." Plyler v. Doe, 457 U.S. 202, 210 (1982). Due process protection applies to non-citizens who have "passed through our gates." Shaughnessy v. U.S. ex rel. Mezei, 345 U.S. 206, 212 (1953). Even in the immigration context, government detention is permissible "only 'in certain special and narrow nonpunitive circumstances, where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" Kong v. United States, 62 F.4th 608, 616 (1st Cir. 2023) (quoting Zadvydas, 533 U.S. at 690).

The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147-49 (1997). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey [v. Brewer, 408 U.S. 471 (1972)]." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, the parolee's "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in "continued liberty." Id. at 481-84.

The regulations authorizing ICE to release a noncitizen from custody into the United States require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for

any future proceeding." 8 C.F.R. § 1236.1(c)(8). Similarly, a noncitizen can be paroled into the United States for "urgent humanitarian reasons" only if the noncitizen presents "neither a security risk, nor a risk of absconding." 8 C.F.R. § 212.5(b). Release under these regulations "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017).

In light of all of the foregoing, the court finds that the initial release of petitioner created a reasonable expectation of liberty as long as he does not pose an unacceptable flight risk or danger to the community, see Perry v. Sindermann, 408 U.S. 593, 601-03 (1972) (finding reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest); Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody he has a protected liberty interest in remaining out of custody.)" or unless there is some material change in circumstance such as imminent authorized removal.

Respondents argue that petitioner's re-arrest and detention are mandated by statute because although petitioner was physically admitted into the United States, he remains an "applicant for admission" under 8 U.S.C. § 1225(b) not entitled to due process protection. For support, respondents point to DHS v. Thuraissigiam, 591 U.S. 103 (2020) in which the Supreme Court found that an alien arrested inside the United States near the border around time of his illegal entry, detained, and ordered removed was not a person present in the country and therefore was not entitled to due process protection.

While it is possible petitioner is still an "applicant for admission" as that term is defined in 8 U.S.C. § 1225(b), petitioner has also been allowed to "pass through our gates," Mezei, 345 U.S. at 212, and is a person within the border of the United States entitled to due process under Zadvydas. These facts distinguish petitioner from Supreme Court precedent as to persons: (1) detained at or near the border and never released into the country, i.e. Thuraissigiam; Ekiu v. United States, 142 U.S. 651 (1892) (petitioner allowed off ship in San Francisco, but ordered detained at nearby mission) and (2) persons released into the country, but already subject to a

final order of removal, i.e. Kaplan v. Tod, 267 U.S. 228 (1925) (petitioner denied admission at Ellis Island and ordered removed was released to custody of an immigrant aid society while deportation suspended during World War I).[2]

The undersigned rejects the premise that petitioner, who was released into the country and is not yet removable does not possess the most fundamental of rights not to be deprived of life, liberty or property by the executive for any reason the executive sees fit. See Jennings v. Rodriguez, 583 U.S. 281, 332 (2018) (Breyer, J., dissenting) ("Freedom from arbitrary detention is as ancient and important a right as any found within the Constitution's boundaries."). Denying petitioner due process protection because he is technically an "applicant for admission" as opposed to an "admittee" as those terms are defined in immigration law, "subordinates fact to fiction, [and] disregards the plain meaning of the Due Process Clause, which promises its protection to every person within the United States." Rincon v. Hyde, No. 15-12633 BEM, 2025 WL 3122784, * 2 (Dist. of Mass., November 7, 2025) (internal quotation omitted). "Indeed, to apply the entry fiction doctrine to a case like petitioner's is to set aside the plain meaning of the Fifth Amendment altogether." Id. at * 7.

B. Process Due

Next, the court identifies the procedures mandated by the Fifth Amendment for protection of the liberty interest identified above. The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context). "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted). Under Mathews, the court considers three factors in determining process due: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. Mathews,

[2] In Leng May Ma v. Barber, 357 U.S. 185 (1958), the Supreme Court found that a petitioner allowed entrance into the U.S. while her admission was under consideration was not entitled to certain statutory protections. The requirements of the Due Process Clause were not at issue.

424 U.S. at 335.

First, petitioner has a paramount interest in remaining free from detention. "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.).

"The risk of an erroneous deprivation [of liberty] is high" without any required process and, in particular, when "[the petitioner] has not received any bond or custody redetermination hearing." See A.E. v. Andrews, 1:25-cv-0197 KES SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).

As to the third Mathews factor, this court recognizes that the government has an interest in facilitating removal, but respondents' interest in not providing petitioner a hearing attendant to detention is "low." Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025). Detention hearings in immigration courts are routine and impose a "minimal cost." Id. Further, such hearings provide help to ensure ICE officers act within the boundaries of the law which is within ICE's interest.

Considering any person in the United States has a supreme interest in liberty, the likelihood of erroneous deprivation of liberty by ICE without any guardrails on ICE officers and that the DHS already has immigration courts in place to ensure deprivation of liberty is lawful, petitioner is entitled to a bond hearing finding that results in a legal justification for detention.

The court also finds that when a noncitizen was previously released following a determination that he is not a flight risk or danger to the community, due process requires a bond hearing at which the government bears the burden of proving that the noncitizen is a flight risk or danger to the community by clear and convincing evidence. See, e.g., Chateauneuf v. Chestnut, No. 1:26-CV-01073-DC-JDP (HC), 2026 WL 523695, at *5 (E.D. Cal. Feb. 25, 2026); Pinchi v.

Noem, 792 F. Supp. 3d 1025, 1038 (N.D. Cal. 2025); Pablo Sequen v. Albarran, 806 F. Supp. 3d 1069, 1093 (N.D. Cal. 2025). "Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention." Ortiz Donis v. Chestnut, No. 1:25-CV-01228 JLT SAB, 2025 WL 2879514, at *15 (E.D. Cal. Oct. 9, 2025).

Petitioner asserts release from custody is the appropriate remedy for respondents' violation of the Fifth Amendment. Considering petitioner's convictions, however, there is a change in circumstances from the time petitioner was admitted into the country possibly justifying continued detention. Given the change in circumstances and given that petitioner's arrest may not have been pretextual, a bond hearing as opposed to outright release is the appropriate remedy.[3] Cavillo v. Chestnut, No. 1:26-cv-0569 DC CSK (HC), 2026 WL 253627, *3 (E.D. Cal. Jan. 31, 2026).

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED;
2. Respondent be ordered to commence a bond hearing within 14 days at which petitioner is afforded the opportunity to have counsel present and granted release from custody unless respondent shows, by clear and convincing evidence, that petitioner is a danger to the community or a flight risk.
3. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **SEVEN** days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within **SEVEN** days after service of the objections. The

[3] Petitioner asserts other claims in his petition. Considering the court grants relief as to petitioner's Fifth Amendment due process claim, and because petitioner fails to point to anything suggesting release would be an appropriate remedy if the court found for petitioner as to any other claim, the court need not address those claims.

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 29, 2026

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
ruiz4714.imm.frs